# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOLOMON WHITE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JEWISH ASSOCIATION ON AGING, d/b/a ) <br> CHARLES MORRIS NURSING AND ) <br> REHABILITATION CENTER, and DOES 1- ) <br> 20, ) <br> ) <br> Defendants. | Civil Action No. 13-344 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

This case involves a dispute over the nursing home costs incurred for Katie White ("Ms. White"), who is now deceased. (Docket No. 1, at 1, 5–6). Plaintiff Solomon White is Ms. White's son. (*Id.* at 6). Defendants include Jewish Association on Aging, which operates Charles Morris Nursing and Rehabilitation Center ("Defendant" or "Charles Morris"), where Ms. White resided from March 11, 2009 until June 2, 2010. (Docket No. 14, at ¶ 1), as well as twenty unnamed defendants. (Docket No. 1, at ¶¶ 8–9). Plaintiff brought this suit for alleged violations of: the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. §§ 1395i-3(c)(5)(A)(ii), 1396r(c)(5)(A)(ii), 42 C.F.R. § 483.12(d)(2); the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201.91; the Fair Credit Extension Uniformity Act, 73 Pa. Cons. Stat. §§ 2270.1–2270.6; and breach of contract, all in relation to Defendant's admission forms and billing. (Docket No. 1, at ¶ 1).

Presently before the Court is the Defendant's "Motion to Dismiss Pursuant to 12(b)(6) in the Form of a Motion for Summary Judgment." (Docket No. [12]). The matter having been fully briefed (Docket Nos. 13; 17; 19), it is now ripe for review.

## I. FACTUAL BACKGROUND

Plaintiff's claims surround his allegation that Charles Morris required him to become a financial guarantor for Ms. White's nursing facility bills as a condition of admitting Ms. White to its facility. (Docket No. 1, at ¶¶ 19, 22). Ms. White was admitted to Charles Morris directly from an acute care hospital. (*Id.*, at ¶ 17). Plaintiff avers that Ms. White was discharged from the hospital "under duress" and that the search for a nursing home took place within two days, even though Plaintiff "knew nothing about nursing homes" and felt he was "under extreme pressure to find an available nursing home as soon as possible." (*Id.*).

Plaintiff alleges that Ms. White's admission to Charles Morris was conditioned on signing certain form documents. (*Id.*, at ¶¶ 12–22). The document central to this dispute is an admission form entitled "Charles M. Morris Nursing and Rehabilitation Center Admissions Agreement" ("Admissions Agreement" or "the Agreement"). (Docket No. 1-1). Plaintiff consented to become a "Responsible Party." (*Id.* at 9). The following provisions describe the role and duties of a Responsible Party:

> **8. Responsible Party Obligations**
> In addition to all other obligations agreed to by the responsible Party in this Agreement, Responsible Party agrees:
>
> 8.1 Responsible Party is *contractually obligated to apply the income and assets of Resident to the charges for Resident's care* at Facility.
>
> 8.2 Responsible Party acknowledges that in the event of his/her failure to apply income and assets of Resident to the charges for Resident's care at Facility, he or she will be *personally* liable for any misappropriation or misapplication of Resident's funds or assets.

8.3 Responsible Party shall seek assistance timely from any third party insurance program(s) which may pay for a portion of Resident's stay at the Facility.

8.4 Responsible Party acknowledges he or she will be personally liable for any damages sustained by the Facility as a result of Responsible Party's failure to timely seek assistance and fully cooperate with any third party payors, including Medicaid, which may pay for a portion of Resident's stay at the Facility.

8.5 Responsible Party is obligated to make full and complete disclosure regarding all financial resources and income of Resident during the Facility's application and admission process and the Medicaid application, appeal, and/or undue hardship process.

8.6 Responsible Party acknowledges his/her agreement to the terms of this Admission Agreement is an inducement for Facility to admit Resident, is not gratuitous, and the inducement constitutes adequate consideration to create a binding and enforceable contract between the Responsible Party and facility.

(*Id.*) (emphasis added).

The parties do not dispute that Plaintiff consented to become the "Responsible Party;" rather, they dispute the nature of this role. (Docket No. 1, at ¶¶ 21–23; Docket No. 13, at 2).[1] Plaintiff argues that Defendant has tried to hold him liable as a third-party guarantor. (Docket

---

[1] In his filings, Plaintiff raised a number of arguments as to the Agreement's validity. The Court briefly treats those issues now. First, in his Response, Plaintiff claims that the Agreement is void, under two separate theories—that it is void because it was signed on March 12, 2009, the day after Ms. White was admitted to Charles Morris, (Docket No. 16, at 2, ¶ 3), or, alternatively, that the Agreement became void on April 11, 2009, which is the point at which Plaintiff claims that Ms. White was held at Charles Morris against her will. (*Id.* at 6, ¶¶ 34, 36).
    With respect to Plaintiff's claims that the Admissions Agreement was void *ab initio*, Defendant points out that the authority upon which Plaintiff relies applies to personal care homes, not skilled nursing facilities. (Docket No. 19, at 10). The legal basis underpinning his argument is 55 Pa. Code § 2600.22, which requires residents being admitted to personal care homes to complete a contract with the home within twenty-four hours of admission. This does not apply to nursing homes.
    With respect to Plaintiff's second theory—that the contract was void as of April 11, 2009—this argument is unavailing. Regardless of whether Plaintiff or Ms. White could have transferred Ms. White to a different facility or rescinded the Agreement after April 11, 2009, Ms. White continued to receive treatment at Charles Morris and the facts give no indication that Plaintiff told Charles Morris that he intended to rescind the contract, even though he visited Ms. White at Charles Morris nearly every day of her admission. (Docket No. 16, at 4, ¶ 16). Therefore, the actions of Plaintiff and Ms. White had the effect of affirming the Agreement, because Ms. White continued to receive services from Charles Morris. *See Schwartz v. Rockey*, 593 Pa. 536, 543 (2007).
    Second, Plaintiff asserts that he signed the Admission Agreement, agreeing to become a Responsible Party, "only after telling the Admission Director the stay would only be for 20 days." (Docket No. 16, at 2, ¶ 3). Plaintiff's argument seems to be that his consent to the Agreement was limited from the start, such that his consent would expire after twenty days. These statements should barred from consideration under Pennsylvania's parol evidence rule, which prohibits parties from attempting to alter the meaning of a complete and integrated written agreement by introducing contemporaneous oral declarations. *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 589–90 (Pa. Super. Ct. 2013). Here, the Agreement was complete. (Docket No. 1-1, at 15, ¶ 22.4).

No. 1, at ¶¶ 21–23). Defendant replies that as Responsible Party, Plaintiff was simply obligated to apply Ms. White's financial resources to pay for her care, and that Plaintiff would only be personally liable if he misappropriated Ms. White's funds. (Docket No. 19, at 2–3).

## II. DEFENDANT'S MOTION TO DISMISS / MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant's Motion to Dismiss each of Plaintiff's claims for failure to state a claim, styled as a Motion for Summary Judgment. (Docket No. 12). This Motion is accompanied by a supporting brief (Docket No. 13) and a Concise Statement of Undisputed Material Facts (Docket No. 14). Plaintiff subsequently filed a Response to the Moving Party's Statement of Material Facts Not in Dispute (Docket No. 16) and a supporting Brief (Docket No. 17), which addressed the Motion and also added some additional facts to his Complaint. The Court ordered a Reply, which was filed on October 8, 2013. (Docket No. 19).

### A. Whether Defendant's Motion to Dismiss Should Be Converted

As a threshold matter, Defendant filed this "Motion to Dismiss pursuant to Rule 12(b)(6), in the form of a Motion for Summary Judgment." (Docket No. 12, at 1). Federal Rule of Civil Procedure Rule 12(d) permits district courts to convert 12(b)(6) motions into motions for summary judgment where "matters outside the pleadings are presented to and not excluded by the court." FED. R. CIV. P. 12(d). This requires that all parties be "given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. District courts need not convert Rule 12(b)(6) motions, however—the court "has complete discretion" on this issue. *Horne v. Crisostomo*, Civ. No. 06-3430 JAG, 2007 WL 2123701, at *3 (D.N.J. July 19, 2007). When confronting a potential conversion, moreover, the court must be careful to protect each party's rights, given the differences between Rule 12 and Rule 56 with regard to the scope of relevant

evidence and the effect of disposition. *Clay v. Dep't of Army*, 239 F. App'x 705, 706–07 (3d Cir. 2007); *Rose v. Bartle*, 871 F.2d 331, 341–41 (3d Cir. 1989).

The Court finds that Defendant's Motion should not be converted into one for summary judgment. As explained below, Plaintiff has failed to state a cognizable federal claim, and so Defendant's Motion can readily be resolved under Rule 12(b)(6). Consequently, the scope of the Court's review is cabined to the Complaint (Docket No. 1), the attached Admissions Agreement (Docket No. 1-1), Defendant's Motion to Dismiss (Docket No. 12), its Brief in Support (Docket No. 13), Plaintiff's Brief in Opposition to same (Docket No. 17), and Defendant's Reply Brief (Docket No. 19). The Court may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 477 (W.D. Pa. 2012) ("A document forms the basis of a claim if it is '*integral to or explicitly relied upon* in the complaint.' " (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004)). Other materials, including Defendant's Concise Statement of Material Facts (Docket No. 14), Defendant's Appendix (Docket Nos. 14-1 to 14-8), and Plaintiff's Response to same (Docket No. 16), will not be considered. *Id.*

**B.     Standard of Review**

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of a complaint. To survive a motion to dismiss, a complaint must contain sufficient factual pleadings to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's plausibility determination is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*). This requirement is designed to facilitate the federal notice-pleading standard, which requires "a short and plain statement of [a] claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (emphasis added).

When ruling on a Rule 12(b)(6) motion, a court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678. The Court may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004). Nevertheless, a court need not credit bald assertions, unwarranted inference, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The plaintiff's obligation to provide the grounds of his legal entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). By authorizing dismissal on the basis of some dispositive issue of law, Rule 12(b)(6) dispenses with "needless discovery and factfinding" for the ultimate purpose of streamlining litigation. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

The foregoing standard applies even with respect to *pro se* litigants. *Maxberry v. Sallie Mae Educ. Loans*, —— F. App'x ——, 2013 WL 3830102, at *1 (3d Cir. July 25, 2013); *Baker v. Younkin*, —— F. App'x ——, 2013 WL 3481724, at *1 (3d Cir. July 3, 2013). At the same time, however, courts are obliged to construe a *pro se* litigant's pleadings liberally. *See Higgs v. Atty.*

*Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.") (citing cases).

**C.     Federal Claims**

1.     Federal Nursing Home Reform Act

First, Plaintiff claims that Defendant violated provisions of the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. §§ 1395i-3(c)(5)(A)(ii), 1396r(c)(5)(A)(ii), and 42 C.F.R. § 483.12(d)(2). These claims stem from Plaintiff's contention that Defendant is illegally attempting to make him a financial guarantor. (Docket No. 1, at ¶ 22–23). In response, Defendant argues that Plaintiff has not stated a cognizable claim because he lacks standing to enforce the FNHRA. (Docket No. 12, at ¶¶ 10–13; Docket No. 13, at 7). Second, Defendant argues that even if Plaintiff does have standing, he has not made out a claim under the FNHRA for the simple fact that Plaintiff is not a guarantor under the Admissions Agreement. (Docket No. 13, at 7–9).

The FNHRA was passed as part of the Omnibus Budget Reconciliation Act of 1987. Pub. L. No. 100-203, §§ 4201–4218, 101 Stat. 1330, 1330-160 to -221 (1987) (codified at 42 U.S.C. §§ 1395i-3, 1396r). This comprehensive law increased federal regulation of nursing homes receiving reimbursement from Medicaid and/or Medicare by implementing "elaborate oversight and inspection" procedures. *Blue v. Koren*, 72 F.3d 1075, 1079 (2d Cir. 1995). The FNHRA does not expressly provide for private enforcement—rather, it includes mechanisms for state officials to enforce its provisions. 42 U.S.C. §§ 1395i-3(h), 1396r(h).

The Court first turns to whether the FNHRA implicitly creates a cause of action against a private nursing facility. The Third Circuit Court of Appeals articulates a two-part test for

determining whether a statute provides a direct[2] private right of action: "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?" *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007). This test is more stringent than the test for finding a cause of action under 42 U.S.C. § 1983, which only requires a showing that Congress intended to create a right. *Grammer v. John J. Kane Regional Centers—Glen Hazel*, 570 F.3d 520, 525 n.2 (3d Cir. 2009).

Case law analyzing the FNHRA is inconsistent, and circuits are split. *See Baum v. Northern Dutchess Hospital*, 764 F. Supp. 2d 410, 421–28 (N.D.N.Y. 2011) (reviewing the case law). Although the Court of Appeals for the Third Circuit took up this issue in *Grammer*, a § 1983 case, and noted that the FNHRA does create an enforceable right, 570 F.3d at 532, it has not ruled on this issue with respect to a direct cause of action.[3] The *Grammer* court pointed out that § 1983 is its own remedy, eliminating the need to ask whether Congress intended to create a private remedy. *Id.* at 525 n.2.

Other courts have considered this question, finding that Congress did not intend to create a private remedy under the FNHRA, and that no direct private cause of action is implied. *See Prince v. Dicker*, 29 F. App'x 52, 54 (2d Cir. 2002) ("[T]he Nursing Home Reform Act's provisions do not confer a right of action on Prince that can be enforced against a private nursing home such as Shore View."); *Baum*, 764 F. Supp. 2d at 425 (ruling that the FNHRA

---

[2] The Court uses "direct" to distinguish causes of action that are brought under 42 U.S.C. § 1983. *See, e.g.*, *Duncan v. Johnson-Mathers Health Care, Inc.*, CA 09-417, 2010 WL 3000718, at *2 (E.D. Ky. July 28, 2010) (making this same distinction).

[3] In *Grammer*, the court analyzed the statutory text and legislative history, concluding that the law implicitly created a right of action for nursing home residents to enforce its provisions through § 1983 actions. 570 F.3d at 532. Because that case dealt with a § 1983 action, however, the court did not address whether a direct action is available under the FNHRA.

Plaintiff has not alleged that Defendant is a state actor or otherwise acted under color of state law, rendering the § 1983 analysis inapplicable. As a matter of substantive constitutional law, "most rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co.*, Inc., 457 U.S. 922, 936 (1982).

does not create a private direct action); *Brogdon ex rel Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d, 1322, 1330–31 (N.D. Ga. 2000) (same); *Duncan v. Johnson-Mathers Health Care, Inc.*, 2010 WL 3000718, at *10 (E.D. Ky. July 28, 2010) (same).

This Court finds these opinions not only persuasive, it agrees with their reasoning. Moreover, the Court's own research has not located any decisions which have held that the FNHRA creates a direct private cause of action. The parties have likewise cited no such precedent. *See also* 55 A.L.R. Fed. 2d 195 (2013) (collecting cases that interpret the FNHRA, and finding no cases finding an implied direct action). As a consequence, the Court holds that Plaintiff has not stated a claim upon which relief can be granted under the FNHRA.

However, even assuming that Plaintiff does have a right to assert this claim, he has still failed to state a plausible claim for relief under this theory because the Agreement he signed did not create a guarantor obligation, nor violate the relevant regulations. Plaintiff alleges that Defendant violated this Act by "requiring a financial guarantee from Mr. White." (Docket No. 1, at ¶ 23). To this end, Plaintiff points to the provision of the FNHRA requiring that skilled nursing facilities "not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility." 42 U.S.C. §§ 1395i-3(c)(5)(A)(ii); 1396r(c)(5)(A)(ii).

On this issue, the Code of Federal Regulations squarely permits nursing facilities like Charles Morris to require a third party to apply the resident's funds to pay for the resident's care:

> (2) The facility must not require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, *the facility may require an individual who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the resident's income or resources*.

42 C.F.R. § 483.12 (2013) (emphasis added).

Plaintiff's duties as Responsible Party include applying Ms. White's income and financial resources to pay for the treatment costs at Charles Morris. (Docket No. 1-1, at ¶ 8). In signing the Admissions Agreement and agreeing to become the Responsible Party, [4] Plaintiff consented to apply Ms. White's financial resources to cover her care. (*Id.*). The Agreement also explicitly states that the Responsible Party's failure to apply a Resident's income and assets to pay for the care would result in the Responsible Party becoming personally liable—not for the bill itself—but "for any misappropriation or misapplication of Resident's funds or assets." (Docket No. 1-1, at 9, ¶ 8.2). Plaintiff makes no allegation that Defendant is doing anything other than what is expressly permitted—requiring him to apply Ms. White's finances to cover her costs. Thus, Plaintiff is not being treated as a guarantor, and his claim should be dismissed.

2. <u>Federal Nursing Facility Requirements Regarding Extra Charges</u>

Plaintiff next claims that Defendant violated a separate federal regulation in its method of assessing charges. (Docket No. 1, at 8, ¶¶ 24–32). Plaintiff relies on a section of the Code of Federal Regulations, promulgated under the FNHRA, requiring facilities to provide notice of charges for treatment and services. 42 C.F.R. § 483.10(b)(5), (6)

The regulation at issue sets forth various requirements to which nursing facilities must adhere in order to participate in the Medicare and Medicaid programs. *Id.* However, the Court of Appeals for the Third Circuit has ruled that this regulation does not create a private cause of action. *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (2010) ("Schneller's claims under 42 C.F.R. §§ 483.10, 483.13, 483.15, and 483.25 do not provide a

---

[4] Under Pennsylvania law, contracting parties are presumed to have read and understood the contract terms when they execute the agreement. *Crispo v. Crispo*, 909 A.2d 308, 313 (Pa. Super. Ct. 2006) ("[Contracting]parties are bound 'without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.' ") (quoting *Sabad v. Fessenden,* 825 A.2d 682, 688 (Pa. Super. 2003).

basis for jurisdiction pursuant to § 1331 because they merely set forth the requirements that a facility must meet in order to qualify to participate in Medicare and Medicaid; they do not confer a private cause of action."). Accordingly, in light of *Schneller*, the Court finds that this claim must be dismissed.

### D. Supplemental Jurisdiction Issue

The remaining state law claims are currently before the Court based on supplemental jurisdiction, given that the parties are not diverse. 28 U.S.C. § 1367(a). A district court's decision regarding whether to exercise supplemental jurisdiction is "purely discretionary," *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). As the Court of Appeals for the Third Circuit has noted, however, when federal question claims are dismissed on the pleadings, the district court ordinarily should "refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances." *Angeloni v. Diocese of Scranton*, 135 F. App'x 510, 514–15 (3d Cir. 2005) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976)); 28 U.S.C. § 1367(c)(3).

The Court finds that no extraordinary circumstances compel the Court to exercise jurisdiction over these claims.[5] Consequently, they will be dismissed, without prejudice.

## III. DEFENDANTS DOES 1–20

In his Complaint, Plaintiff named "Does 1–20" as potential defendants because he lacked information about the true names of the individuals he intended to name. (Docket No. 1, at ¶ 8). He substituted fictitious names and averred that he would seek leave to amend his Complaint once he obtained the correct names and capacities of these twenty defendants. (*Id.*).

---

[5] Plaintiff and Defendant JAA are engaged in state court litigation relating to Ms. White's nursing home charges. Currently pending in the Court of Common Pleas is the action *Jewish Association on Aging v. White et al.* (AR-12-004435), which is scheduled for trial call on January 28, 2014. The Court notes that exercising supplemental jurisdiction at this time would unnecessarily consume judicial resources, and that Plaintiff has shown his ability to navigate the state court system.

Since filing his Complaint on March 8, 2013, Plaintiff has not moved to amend his pleading and substitute the correct party names. In light of the Court's finding that Plaintiff has failed to state a claim under the FNHRA and his other claims are dismissed under 28 U.S.C. § 1367(a), any attempt to amend the pleading to name these defendants under FED. R. CIV. P. 15(a) would be futile. *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) ("[L]eave to amend need not be granted when amending the complaint would clearly be futile."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (defining "futility" as meaning that the amended complaint would fail to state a claim upon which relief could be granted) (citations omitted). As such, Plaintiff's claims with respect to Does 1–20 must also be dismissed. *Id.*

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [4] will be GRANTED, and Plaintiff's Complaint (Docket No. [1]) with be DISMISSED, with prejudice, as to the federal clauses of action, and without prejudice, as to the state law causes of action.

An appropriate order follows.

           *s/Nora Barry Fischer*
           Nora Barry Fischer
           United States District Judge

Date:    November 7, 2013

cc/ecf:  Solomon White
       9200 Vantine Street
       Pittsburgh, PA  15235
       (Regular and Certified Mail)

       All counsel of record